J-S28004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES EDWARD NOTTINGHAM | : | |
| | : | |
| Appellant | : | No. 1207 MDA 2017 |

Appeal from the Judgment of Sentence July 14, 2017
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001190-2015

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 11, 2018**

Appellant, James Edward Nottingham, appeals from the judgment of sentence entered on July 14, 2017.  On this direct appeal, Appellant's court-appointed counsel has filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  We conclude that Appellant's counsel has complied with the procedural requirements necessary to affect withdrawal.  Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous.  We, therefore, grant counsel's petition for leave to withdraw and affirm Appellant's judgment of sentence.

The trial court thoroughly explained the underlying facts of this case:

> In the early morning hours of July 13, 2015, Pennsylvania State Police (PSP) were dispatched to a residence on Peavine Hollow Road in Hughesville, [Pennsylvania], in response to a

screaming 911 call. All five people present at the residence at the time police responded to the call testified at trial regarding their recollection of that evening/early morning. The Commonwealth's witnesses were [J.S.,] her daughter (S.S.)[, and J.S.'s two cousins, B.R. and T.M. Appellant] testified on his own behalf.

**Commonwealth's Testimony**

Trooper Jason Michael Cooley ["Trooper Cooley"] testified on behalf of the Commonwealth. He testified that when meeting [Appellant] in his driveway, [Appellant] was clearly intoxicated. He began his investigation regarding the damage to the white Mercury [automobile]. He testified that [Appellant] began eating the broken auto glass. [Appellant] tried to convince [Trooper] Cooley that the 911 call was related to an ongoing property dispute of which PSP was well aware[;] however, when [Trooper] Cooley walked into the home he found [J.S., S.S., B.R., and T.M.] inside and described them as "scared little puppies." Another law enforcement officer came to the home [to] secure the area and [Trooper] Cooley took [Appellant] to the [police] station for questioning.

The 911 caller on the date in question was S.S., the daughter of [J.S. J.S.] was the live-in girlfriend of [Appellant] at the Peavine Hollow residence. S.S. called 911 at the direction of her mother because [Appellant] would not allow [J.S.] to leave his premises in his white Mercury vehicle. [Appellant] had blocked [J.S.] from leaving his driveway by parking his truck behind her.

Earlier in the day, [Appellant] had been working with [B.R.] and [T.M.,] clearing out a foreclosed home. After work, they proceeded to go [to] the bar and drink [alcohol for] one to two hours. T.M. remained in [Appellant's] truck outside the drinking establishment, as he [was] a minor. [J.S.] did come to the bar that evening but left around [10:00 p.m.] and returned to [Appellant's] residence.

When [Appellant] came home from the bar, he had [B.R.] and [T.M.] with him in his truck. [J.S.] was trying to leave [Appellant's] home with her daughter at that time but

[Appellant] blocked her egress and threw a bottle at the back of the white Mercury she was driving.

[T.M.] testified that [Appellant] stopped [J.S.] from leaving. [B.R.] testified that [Appellant] said "Where are you going bitch in my car?" [J.S.] told her daughter to go in the house and call 911, and [J.S.] followed shortly behind her as did [Appellant] and the other occupants of his vehicle.

[S.S.] testified that she went to the upstairs bathroom to call 911 and that [Appellant] came into the bathroom and took the phone from her "after he busted the bathroom door open." [J.S., B.R., and T.M.] testified that [Appellant] picked up [J.S.] and dropped her and that when she was cowering in the kitchen he threatened her life. He had [a loaded] rifle he obtained from a dresser drawer. T.M. tried to protect [J.S.] and [Appellant] picked T.M. up and threw him over his shoulders and struck his head. T.M. testified that [J.S.] was begging for her life and that his belief was that [J.S.] was about to die. [B.R.] testified that [Appellant] told him and T.M. that he was not going to kill them[. B.R. testified:]

> I'm trying to talk to [Appellant], trying to talk to him, just not getting through. Stop. Points the gun at us and says I'm not going to kill you, you guys have done nothing wrong to me and he puts his focus back on [J.S.]

[J.S., T.M., and B.R.] all testified that [Appellant] discharged his rifle outside the home and inside the home. Trooper William Jones ["Trooper Jones"] from the Bureau of Forensic Services of PSP, testified to the location of discharged cartridges at the house which corroborated the testimony of the witnesses.

**[Appellant's] Testimony**

In many respects, the testimony of [Appellant] was similar to that of the Commonwealth's witnesses. He testified that he had been cleaning a home on that date with [J.S.'s] cousins[, that] they had gone drinking afterward[,] and that he had an argument with [J.S.] when they returned to the house. He had different explanations for the bottle and the broken windshield. He claimed that T.M. and [J.S.] assaulted him. He did admit that he called [J.S.] a "bitch" after the alleged

assault and then almost immediately saw law enforcement vehicle lights and went outside to meet the responding officers. At trial, he denied having a gun during the incident. [Appellant] testified that it was [Trooper] Cooley who had injured him . . . and that was where all the "blood came from."

On rebuttal[,] the Commonwealth presented/confronted [Appellant] with prior testimony that [Appellant] had given at both an earlier hearing and the testimony of a probation officer that had interviewed [Appellant] regarding the incident. [Appellant] on these prior occasions admitted that he did have a gun. Also on rebuttal, the Commonwealth questioned [Trooper] Jones regarding the blood found at the crime scene. The photographs showed suspected blood patterns on the license plate, the trunk lid, the door, the magazine of the firearm, the door handle of the residence, and a bag of undischarged rounds.

Trial Court Opinion, 11/1/17, at 1-6 (internal citations omitted).

Appellant was charged with many crimes, including unlawful restraint, endangering the welfare of a child, terroristic threats, possessing instruments of a crime, simple assault, recklessly endangering another person, and persons not to possess firearms.[1] The persons not to possess firearms charge was severed for trial and, on November 1, 2016, the trial court found Appellant guilty of that charge. On January 10, 2017, the trial court sentenced Appellant to serve five to ten years in prison for the persons not to possess firearms conviction.[2]

---

[1] 18 Pa.C.S.A. §§ 2902(a)(1), 4304(a)(1), 2706(a), 907(a), 2701(a)(1), 2705, 6105(a)(1), respectively.

[2] We note:

On June 29, 2017, the jury found Appellant guilty of unlawful restraint, endangering the welfare of a child, terroristic threats, possessing instruments of a crime, simple assault, and recklessly endangering another person. On July 11, 2017, the trial court sentenced Appellant to serve an aggregate term of three to six years in prison for these convictions, with the sentence to run consecutively to Appellant's sentence for persons not to possess firearms. N.T. Sentencing Hearing, 7/11/17, at 12-15.

Appellant filed a timely notice of appeal. On appeal, Appellant's court-appointed counsel filed a petition for leave to withdraw and counsel accompanied this petition with an **Anders** brief. The **Anders** brief raises one claim:

> Did the trial court err in not granting Appellant's oral motions to have the blood evidence in the case tested and compared to his DNA when it is Appellant's contention, given in his

---

> a defendant who is aware of the charges against him can thus waive his statutory right to have them all brought in a single prosecution. If he himself requests separate trials and obtains a court order to that effect, or if he knowingly acquiesces in what appears to be an advantageous separation, he cannot later raise an objection claiming the statutory protection from multiple trials. The intent of the statute to avoid magnifying an incident of criminal behavior out of proportion, both in terms of hardship to the individual and prejudice to his case, is not lost when an informed defendant chooses of his own to go the route of multiple trials.

**Commonwealth v. Green**, 335 A.2d 493, 496 (Pa. Super. 1975); **see also Commonwealth v. Wallace**, 602 A.2d 345, 349 (Pa. Super. 1992).

testimony at trial, that the blood was planted by law enforcement and is not his?

Appellant's Brief at 6.

Before reviewing the merits of this appeal, this Court must first determine whether appointed counsel has fulfilled the necessary procedural requirements for withdrawing as counsel. *Commonwealth v. Miller*, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under *Anders*, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." *Miller*, 715 A.2d at 1207. Second, counsel must file an *Anders* brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Finally, counsel must furnish a copy of the *Anders* brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

- 6 -

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5; ***see also Commonwealth v. Yorgey***, \_\_\_ A.3d \_\_\_, 2018 WL 2346441, at *5 (Pa. Super. 2018) (*en banc*) (holding that the ***Anders*** procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. . . . [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our review begins with the claim Appellant raises in his brief.

On appeal, Appellant claims that the trial court erred when it denied his oral motion to compel the Commonwealth to test the blood evidence. Appellant's Brief at 13-14. The trial court explained why this claim is frivolous:

> Although [Lycoming County Court of Common Pleas President Judge Nancy L. Butts] handled the trial, [Appellant's initial motion was presented to the Honorable Marc F. Lovecchio]. . . . At that hearing, [Judge Lovecchio] decided that 1) the court did not have the power to order the test of the blood as [Appellant] requested and 2) even if it were within the power of the court to order such testing, the results would not be relevant to the crimes charged as the Commonwealth was not using the evidence in its case in chief. Judge Lovecchio reserved his right to revisit his decision if trial testimony changed the determination that testing of the blood would [] not be probative of any material element of the crimes charged.
>
> [Appellant's] counsel did renew [his] request for the blood to be tested with [the trial court] prior to the trial commencing. [Appellant's] counsel argued that the testing of the blood was essential to help prove [Appellant's] defense. However, [Appellant's] counsel did not present new evidence that would [have] authorize[d the trial] court to modify the ruling of another common pleas judge. . . .
>
> [Moreover,] any testimony about blood was presented by [Appellant] in his case. [Appellant] testified that it was [Trooper] Cooley who had injured him . . . and that was where all the "blood came from." Therefore, the [trial] court granted the Commonwealth's request to question [Trooper] Jones regarding the blood found at the crime scene on rebuttal. The crime scene photographs establish that blood was present at the scene prior to [Appellant's arrest]. . . . [Appellant] did not need testing of the blood or an order to exclude the evidence as the Commonwealth did not present it in its case in chief.

Trial Court Opinion, at 6-7 (internal citations and some internal capitalization omitted).

We agree with the trial court's explanation. In this case, the Commonwealth agreed not to use the blood evidence at trial. N.T. Motions Argument, 6/6/17, at 4. Further, the fact that Appellant either was or was

not bleeding on the night in question was irrelevant to the charges against Appellant and the Commonwealth did not introduce the blood evidence during its case in chief. N.T. Trial, 6/26/17, at 1-84. Rather, Appellant testified that there was blood on his property during his own case in chief. *See id.* at 102-103. Under these circumstances, it is frivolous to claim that the trial court erred in refusing to compel the Commonwealth to test blood that was irrelevant to the charges against Appellant and that the Commonwealth did not introduce during its case in chief.

We have independently considered the issue raised within Appellant's brief and we have determined that the claim is frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition for leave to withdraw.

Petition for leave to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2018